**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert GRIMES, Defendant-Appellant.**

**No. 15363.**

United States Court of Appeals
Sixth Circuit.

June 4, 1964.

Frank E. Haddad, Jr., Louisville, Ky., for appellant.

Ernest W. Rivers, Asst. U. S. Atty., Louisville, Ky., for appellee, William E. Scent, U. S. Atty., Louisville, Ky., on the brief.

Before MILLER, Circuit Judge, and LEVIN and KENT, District Judges.

KENT, District Judge.

Defendant appeals after having been convicted by a jury under each of two counts of an indictment, which charged in the first count that he, together with Herbert Henry Staedtler, did by force, violence and intimidation take from the person and presence of Jerome C. Hertweck money of the Royal Bank and Trust Company, Highland office, Louisville, Kentucky, and in the second count, that the defendant did take such money from the person and while engaged in said acts did put in jeopardy the life of said Jerome C. Hertweck by the use of a dangerous weapon, to-wit, a firearm.

It was the theory and claim of the Government that the defendant did aid and abet Herbert Henry Staedtler in the commission of the offenses charged and was therefore guilty as a principal. On trial the defendant Grimes was convicted and was thereafter sentenced to serve 25 years in the penitentiary. Staedtler admitted that he robbed the bank, pleaded guilty upon arraignment and was sentenced. He was brought back to testify at the trial of Grimes.

The theory of the appeal is that there was not sufficient evidence to sustain the conviction in the trial court. Appropriate motions were made at the end of the Government's proofs, and at the end of all the proofs, for a judgment of acquittal. The motions were denied by the trial judge.

The evidence for the Government established that Staedtler and Grimes had been "friends" before the robbery of the Royal Bank and Trust Company, Highland office, in Louisville, on April 25, 1962. The evidence for the Government further established that only one person, Staedtler, entered the bank, only one person, Staedtler, robbed the bank, and there was no evidence that any other person than Staedtler was in the vicinity of the bank before, during or after the robbery. Admittedly, Staedtler was armed at the time he robbed the bank.

After the manager of the bank identified Staedtler as the robber, agents of the Federal Bureau of Investigation and a Louisville policeman went to the home of the defendant Robert Grimes, found Staedtler there and arrested him at about 2:30 P.M., the robbery having occurred at twelve o'clock noon. A search of the premises by the officers turned up a suitcase containing money which a subsequent count disclosed to be $16,746. The amount stolen from the bank was $17,526. Grimes was not at home at the time that Staedtler was arrested and the original search was made. One of the witnesses, a Louisville policeman, testified that while searching the house, seeking the gun with which the officers believed Staedtler had been armed, he poked in certain cannisters on the kitchen cupboard and found no foreign material or substance in any of them. It was not too clear, from the evidence, as to whether the officer *looked* in the cannister in such manner as to find anything that might have been in the cannister.

At about eight o'clock in the evening on the same day, two F.B.I. agents returned to the Grimes home and found Grimes there with some of his relatives. The agents informed Grimes that some of the money was still missing and said they would like to search the house, to which Grimes agreed. During the course of the search the defendant's wife, who was assisting in the search, found $780.00 (the amount missing) hidden in a cannister of flour on the kitchen cupboard. The money was lying on top of the flour. Upon questioning, Grimes refused to divulge where he had been during the period of time between 10:30 A.M. and 2:00 P.M. on that day, which was the day of the robbery. At the time of the questioning Grimes knew that Staedtler had been arrested in his home, for robbery of the bank.

The Government offered evidence to establish that Staedtler drove an automobile into a garage in the vicinity of St. James School between noon and 1:00 P.M., that he got out of the car which he was driving and got into another car, a dark, metallic blue, 1959 Chevrolet Impala, which had been waiting and which was occupied by one man who was never identified except by a very general description.

Grimes testified during the course of the trial that the only car he owned, or to which he had had access, was a red and white 1959 Chevrolet Biscayne, and no evidence was offered to contravene this statement. Grimes stated that he had last seen Staedtler about three days before the robbery, although Staedtler's landlady testified that she had seen Grimes at Staedtler's apartment the night before the robbery. On cross-examination she admitted that she could not remember the date or the occurrence and her testimony was very weak.

Grimes explained, on the trial, that the reason for refusing to divulge his whereabouts between 10:30 A.M. and 2:00 P.M., on the date of the robbery, was because he had been in trouble on a previous occasion, that he ascribed his difficulty, which resulted in a prison sentence, to the fact that he had talked to the police officers and he claimed that his story had been twisted. On the trial he claimed an alibi and offered evidence from relatives to establish his where-

abouts at all the appropriate times between 10:30 A.M. and long after 2:00 P. M. The Government offered evidence to impeach some of the alibi testimony.

Staedtler took the stand and testified on behalf of Grimes. He testified that he robbed the bank alone without any assistance from Grimes or anyone else, that Grimes had no knowledge of the robbery, except as he had gained it from radio and newspaper statements, that the money in the cannister in the kitchen of the Grimes home had been placed there by Staedtler when he saw the officers coming toward the back porch as he was attempting to leave by the back door. At the time he hoped that he would not be found with the money or the gun.

Essentially, the evidence established an acquaintance between Grimes and Staedtler, the arrest of Staedtler at the Grimes home, that Staedtler had in fact robbed the bank, that he was alone at the time of the robbery, that he later met an unidentified man before 1:00 P. M., that at about 2:00 P.M. he was found and arrested in Grimes' home in possession of the proceeds of the robbery and a gun, that when originally questioned Grimes refused to explain his whereabouts between 10:00 A.M. and 2:00 P. M. on the day of the robbery, that the exact amount of the missing proceeds of the robbery was found in the Grimes home.

■■ It is the theory and claim of the Government that the evidence was sufficient to sustain the conviction of the defendant-appellant, although, admittedly, the evidence was entirely circumstantial. The law recognizes that circumstantial evidence is of value equal to direct evidence and that it is not necessary that it be such evidence as would remove every reasonable hypothesis except that of guilt. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, (1954); United States v. Young, 291 F.2d 389, C.A.6 (1961). Direct evidence is not necessary to sustain a conviction. Blalack v. United States, 154 F.2d 591, C.A.6, (1946).

On appeal this court should not weigh the evidence but should examine the evidence to determine whether there was evidence of sufficient weight to justify a finding of guilt beyond a reasonable doubt on the part of the jury. In weighing the evidence and testing the evidence this court must take such view and draw such inferences as reasonably and justifiably may be drawn from the evidence viewed in the light most favorable to the Government, and if there was substantial competent evidence which would support the conviction the refusal of a judgment of acquittal must be sustained. Blalack v. United States, 154 F.2d 591, C.A.6, (1946); Zottarelli v. United States, 20 F.2d 795, C.A.6, (1927).

■■ In testing the evidence offered and received in the instant case, we must recognize that mere suspicion is not sufficient to sustain a conviction. United States v. Dunn, et al., 299 F.2d 548, C.A. 6, (1962). In the Dunn Case this court stated at page 554:

"The additional evidence against Dunn might well arouse suspicion and support a speculative conclusion of his guilt. Indeed it might lead to sophisticated surmise that he was the inspiration of the claimed criminal plan. Such speculation, however, is not sufficient to sustain a judgment of conviction. United States v. Berkley, 288 F.2d 713, 718 (C.A.6, 1961); Moore v. United States, 271 F.2d 564, 568 (C.A.4, 1959); Guevara v. United States, 242 F.2d 745, 747 (C.A.5, 1958); Wise v. United States, 241 F.2d 545, 547 (C.A.5, 1957)."

And the mere fact of previous acquaintance between the admitted robber of the bank and the defendant-appellant is not sufficient to sustain a conviction. As was said by the Court of Appeals for the Ninth Circuit in Evans v. United States, 257 F.2d 121, at page 126:

"There is, of course, evidence of an intimate personal relationship between William and Josephine, who handled the heroin in question. But

guilt may not be inferred from mere association. Ong Way Jong v. United States, 9 Cir., 245 F.2d 392, 394. * * *

"It is no doubt true that the evidence as to William's association with Josephine, and as to his own past record of convictions, gives rise to a suspicion that he conspired with Josephine regarding the transaction of March 4, 1957. But a suspicion, however strong, is not proof, and will not serve in lieu of proof. Ong Way Jong v. United States, supra, 245 F.2d 394."

We recognize that in a case of this nature the Government is dependent upon the use of circumstantial evidence and obviously "[c]ircumstantial evidence from which reasonable inferences may be drawn will sustain a verdict." Hupman v. United States, 219 F.2d 243, 247, (C. A.6, 1955).

And as was said by the court in United States v. Burch, 313 F.2d 628, 629, (C.A. 6, 1963):

"Circumstantial evidence, if strong enough to convince the trier of the facts of a defendant's guilt beyond a reasonable doubt, is sufficient to sustain a finding of guilt. (citing cases)."

On analysis of the evidence in this case this court is forced to the conclusion that the Government offered circumstantial evidence sufficient to establish a strong suspicion that Grimes *might* have had criminal knowledge of the bank robbery by Staedtler. The circumstantial evidence undoubtedly creates a suspicion, not as strong as the other, that Grimes *might possibly* have rendered some assistance to Staedtler subsequent to the robbery in question. But as heretofore stated, suspicion is not enough to sustain a conviction, Scott v. United States, 98 U.S.App.D.C. 105, 232 F.2d 362 (D.C.Cir., 1956); Glover v. United States, 306 F.2d 594 (10 Cir., 1962).

We can only sum up by saying that viewing all of the evidence in the light most favorable to the Government, we reach the conclusion that the officers, the jury, and the trial court would have been justified in suspecting that Grimes had a part, no matter how small, in the robbery of the bank or in the sharing of the proceeds of the robbery. We are, however, forced to the conclusion that there was not sufficient competent evidence to establish the guilt of the accused beyond a reasonable doubt.

In the light of the conclusion which the court has reached, it is not necessary that we consider or discuss the allegations of error relative to the court's instructions. The conviction is reversed, and the case will be remanded to the trial court for the entry of a judgment of acquittal as to each of the two counts of the indictment.