UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Artemus BURKEEN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Harold Tucker MATLOCK, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Leamon Louis MATLOCK, Defendant-Appellant.

Nos. 16150–16152.

United States Court of Appeals Sixth Circuit.

Aug. 31, 1965.

W. David Stinson, Memphis, Tenn., for Leamon Louis Matlock.

Charles A. Walt, Memphis, Tenn., for Robert Artemus Burkeen and Harold Tucker Matlock.

Jere B. Albright, Memphis, Tenn., Herbert J. Miller, Jr., Asst. Atty. Gen., Crim. Div., Dept. of Justice, Washington, D. C. (Thomas L. Robinson, U. S. Atty., Dwayne D. Maddox, Asst. U. S. Atty., Memphis, Tenn., on the brief), for appellee.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

CECIL, Circuit Judge.

Robert Artemus Burkeen, Harold Tucker Matlock and Leamon Louis Matlock, defendants-appellants herein, appeal from a judgment of conviction in the United States District Court for the Western District of Tennessee, on a three-count indictment charging robbery of the Bank of Enville, Enville, Tennessee. The case was tried to a jury and all of the appellants were found guilty on the three counts of the indictment. Appellants Burkeen and Harold Matlock were each given concurrent sentences totalling twenty years on the three counts of the indictment. Appellant Leamon Matlock was found guilty as an aider and abettor (Section 2, Title 18, U.S.C.) and was given concurrent sentences totalling ten years.

The robbery of the bank occurred about 8:30 a. m., September 25, 1963. On October 2nd following, the appellant Harold Matlock was detained at the International Border between Mexico and the United States while re-entering the United States from Mexico, at Laredo, Texas. He was given a routine search by inspectors and Customs Agent Earl Simmons. At the time of his detention, the appellant was driving a 1950 blue Mercury automobile with an Illinois license. He was unable to account for his possession of the automobile and he had no driver's license. The appellant's belongings, including more than $600 in "old" (worn and marked) United States currency, were taken from him by the customs agent and later given to a deputy sheriff. The customs agent notified the sheriff at Laredo of the appellant's detention and he was placed under arrest by the deputy sheriff. He was charged with failure to have registration or ownership documents for the Mercury automobile, failure to have driver's license and fail-

ure to have Selective Service Card. At the time of the detention and arrest at the border, there was a valid warrant outstanding for the arrest of the appellant Harold Matlock.

The old United States currency and other articles, among the belongings taken from the appellant Harold Matlock, were admitted in evidence at the trial. The sole questions raised on the appeals of appellants Burkeen and Harold Matlock are whether the search and seizure at the border was valid and whether the seizure of the currency and its introduction into evidence was proper. It is argued that there being no arrest of the appellant Harold Matlock by the customs officers, there could be no valid search of his person.

■■ We conclude that the search of the appellant Harold Matlock by the customs officers was valid. Section 1582, Title 19, U.S.C. provides:

"The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations."

The appellant was detained by the customs officers but he was not arrested by them in the sense that he was held under a charge of violating the law. The question then arises whether it was illegal for the customs officers to turn the appellant, together with his belongings, over to the custody of the deputy sheriff. No cases have been cited to us and we have found none in our research decisive of this question.[1] The customs officers

---

1. In United States v. Beckley, 335 F.2d 86, C.A. 6, cert. den. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L. Ed.2d 807, we held that customs officers opening an air parcel post package in Miami, mailed in the Canal Zone and addressed to defendant in Detroit, was au-

thorized by customs and postal statutes and regulations, and did not violate the Fourth Amendment even though officers used information gained thereby to obtain a search warrant to seize the package in Detroit as soon as it was delivered to defendant. See also, cases cited therein.

were authorized officers of the United States. It was obvious to them from their search of the appellant that he was in violation of state laws. Under the circumstances they could reasonably have suspected him of other crimes. We can see no reason to hold this procedure illegal or to hold that the evidence thus obtained was inadmissible in a subsequent trial.

There were two possible alternatives open to the customs officers. They could have returned the appellant's belongings to him and sent him on his way because, to their knowledge, he had violated no federal law. This would make a mockery of law enforcement. On the other hand, the customs officers could have returned the appellant's belongings to him and then turned him over to the deputy sheriff with an explanation of what they had found. This would have given the deputy sheriff reasonable ground to believe that an offense was being committed and would have justified an arrest. An arrest having been made, the appellant would then be subject to search. The result would have been the same.

■ It is claimed that even though the search and seizure was valid, the currency which was taken from the appellant was not admissible in evidence for the reason that it could not be identified as fruits of the crime. A motion was made on behalf of the appellant Harold Matlock, under Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress as evidence $671 in currency, which was taken off of the person of appellant Harold Matlock. A hearing was held by the trial judge on this motion and it was conceded by counsel for both the government and the appellant that the currency could not be held unless it was fruit of the bank robbery. Honig v. United States, 8 Cir., 208 F.2d 916. Upon the hearing, the trial judge found that the currency was the fruit of the bank robbery and he ordered it held and later admitted it in evidence at the trial. While the currency was not positively identified as being part of the currency stolen from the bank, we agree with the ruling of the trial judge. We hold that there was sufficient evidence that the currency taken from the appellant was the fruit of the crime to warrant its admission in evidence.

■ The judgment of the District Court as to the convictions of the appellants Burkeen and Harold Matlock is affirmed.

The appellants Burkeen and Harold Matlock were positively identified as the men who entered and robbed the bank. There is no claim that a third man entered the bank. The guilt of appellant Leamon Matlock turns on whether he aided and abetted the principals, Burkeen and Harold Matlock, in perpetrating the robbery. The pertinent question is whether there was sufficient evidence against the appellant Leamon Matlock to submit the case to the jury.

■ The evidence of the guilt of appellant Leamon Matlock's guilt is entirely circumstantial. Counsel for appellant Leamon Matlock argues that where the government's case is based on circumstantial evidence, it must be such as to exclude every reasonable hypothesis other than that of guilt. This is not the law. In Holland v. United States, 348 U.S. 121, at p. 140, 75 S.Ct. 127, at p. 137, 99 L.Ed. 150, the Court said:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

The following is a summary of the evidence which might tend to implicate

the appellant Leamon Matlock and which must be looked to to support an inference of guilt. The dates mentioned here refer to September 1963, the month and year of the robbery.

On or about September 14th, the three appellants with Dorothy Carpenter and Doris Taylor left Tennessee for a trip to Texas with one Sonny Taylor. On September 16th, Bill Wood, a Dallas, Texas automobile dealer, sold to appellants Harold Matlock and Leamon Matlock a 1952 model, light green, Cadillac automobile. The serial number of this automobile was 526007523 and the license number was N.B.3351. The three appellants were seen in Hayti, Missouri, in the 1952 Cadillac automobile on a date believed to be Sunday, September 22nd.[2]

On September 25th, the morning of the robbery, a 1957 Chevrolet automobile with light green bottom and white top, belonging to a Mrs. Delaney was stolen from a factory parking lot in Saltillo, Tennessee. This automobile was positively identified as the one used by the robbers in leaving the bank after the robbery. Later, on the morning of the robbery, a green and white 1957 Chevrolet automobile was found on a gravel road out from Enville. This was the automobile of Mrs. Delaney. The 1952 Cadillac automobile, with Texas license plates, was seen, early on the morning of the robbery, to go down the street in Saltillo, with three men in it. Later the Cadillac came back up the street with two men in it followed by the Delaney Chevrolet, with one man in it, who was not Mr. Delaney.

The 1952 Cadillac automobile, with Texas license plates, and with three men in it, was seen the night before the robbery and on the following morning prior to the robbery. Of the three men in the automobile only appellant Harold Matlock was identified. Following the robbery, a 1952 light green Cadillac automobile with three men in it was seen on the highways by several witnesses.

At the place where the Delaney Chevrolet automobile was found after the robbery, photographs were made of tire tracks. About two miles away, an automobile had hit a dirt bank at a curve in the road, leaving paint chips on the bank. Paint and dirt samples were taken and analyzed. A hub cap to a Cadillac automobile was found nearby.

About 8:00 or 8:30 o'clock, on the night of the robbery, three men in a 1952 light green Cadillac came to the home of Herschel Eaton near Booneville, Mississippi. One of these men was identified as appellant Leamon Matlock. One of the other men bought a blue 1950 Mercury automobile which had an Illinois license plate on it. The two men other than Leamon Matlock drove away in this Mercury automobile.[3] The appellant Harold Matlock was identified as the one who went to the door of Herschel Eaton. Appellant Burkeen was identified as the one who paid the money for the Mercury automobile. At this same time, appellant Leamon Matlock traded the light green Cadillac automobile with the Texas license to Herschel Eaton for a 1947 Plymouth automobile. The appellant received $100 in addition to the Plymouth automobile. Two hub caps were missing from the Cadillac. After dark on the night of the robbery, Charles Eaton, a brother of Herschel Eaton, sold two men who were with appellant Leamon Matlock a 1956 Mercury automobile for $350.

When appellant Leamon Matlock learned that he was wanted in connection with the Enville bank robbery, he gave himself up to the sheriff of McNairy County. On September 26th he declined to discuss his activities of the day before. On the 27th he maintained that he drove alone in a 1947 Plymouth au-

---

2. This is the last time that the appellant Leamon Matlock was identified as being with the other two appellants prior to the robbery.

3. This is the same automobile that appellant Harold Matlock *had* when he entered the United States from Mexico at Laredo, Texas.

tomobile from Cairo, Illinois, to Ramer, Tennessee, arriving there on the morning of September 26th. Later, after a line-up at which Herschel Eaton was present, appellant Leamon Matlock admitted to the transaction with Herschel Eaton on the night of the robbery, and admitted that appellants Burkeen and Harold Matlock were with him.

██ The 1952 Cadillac automobile, traded by appellant Leamon Matlock to Herschel Eaton on the night of the robbery, was identified through paint samples, tire track photographs, fingerprints and hub cap similarity, as being the second getaway car which met the Delaney Chevrolet automobile at the point where it was abandoned. From all of these facts, it was logical to infer that appellant Leamon Matlock was the driver of the second getaway automobile. It is obvious that the second getaway automobile met the Delaney automobile by design and plan. Considering the lie that appellant Leamon Matlock first told F.B.I. agents about his activities on September 25th and all of the facts and circumstances surrounding this bank robbery, we conclude that a logical inference could have been drawn by the jury that appellant Leamon Matlock met the bank robbers by plan and that he knew he was meeting them to facilitate their escape, after a bank robbery. This would constitute aiding and abetting the perpetration of the robbery.

The evidence as summarized here was sufficient to submit the question of appellant Leamon Matlock's guilt as an aider and abettor to the jury. The case being properly submitted to the jury, there was no error in denying the motion of appellant Leamon Matlock for acquittal at the close of the government's case.

██ Counsel for appellant Leamon Matlock relies strongly on Dawes v. United States, 177 F.2d 255, C.A.6, and United States v. Grimes, 332 F.2d 1014, C.A.6. In cases where guilt is based on circumstantial evidence, each case must be judged on its own facts. No two cases are exactly alike on the facts. The Dawes case was decided on what is now recognized as an erroneous statement of law. The Court said at p. 257 of 177 F.2d to sustain a conviction on circumstantial evidence, "the facts much (sic) be such as to exclude every rational hypothesis except that of guilt." This rule was held to be erroneous in Holland v. United States, supra. The facts in the Grimes case were materially more favorable to the accused aider and abettor than is true in this case.

██ Counsel for the appellant Leamon Matlock claims that the Court erred in admitting certain evidence concerning guns. Charles Edward Taylor testified that on the occasion when he and the three appellants went to Texas he stopped the automobile near a bridge shortly after leaving for Texas and hid a gun for appellant Harold Matlock. He also testified that he later recovered this gun and that he had it continuously in his possession until the time of the trial.

The one other incident concerning a gun was in the testimony of Mrs. Emily Ponds. She testified that her husband operated a tavern and that on one occasion prior to the robbery the three appellants were at their tavern and appellant Harold Matlock dropped a gun on the floor.

These incidents were not directly connected with the robbery in question. According to the uncontroverted testimony in the case, the two appellants who committed the robbery were armed at the time of the robbery. Since there is no claim that the appellant Leamon Matlock was armed and he is only implicated as an aider and abettor, his substantial rights were not affected by this testimony. Rule 52(b) Federal Rules of Criminal Procedure.

The judgment of the District Court as to Leamon Matlock is affirmed.