774 F.2d 1164
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
United States of America, Plaintiff-Appellee,
v.
Joseph v. Federico, Defendant-Appellant.
 No. 83-1354
 United States Court of Appeals, Sixth Circuit.
 9/11/85
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATED DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: MILBURN, Circuit Judge; EDWARDS, Senior Circuit Judge; and SILER, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant Joseph v. Federico appeals from his jury convictions for conspiracy to possess with intent to distribute and conspiracy to distribute heroin in violation of 21 U.S.C. Secs. 846 and 841(a)(1) and two counts of aiding and abetting his wife, Delores, in distributing heroin in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2(a). The court sentenced defendant to concurrent eight year terms of imprisonment as to each count. Defendant's wife entered into a plea agreement with the government and is not a party to this appeal. For the reasons that follow, we affirm in all respects.
 
 I.
 
 2
 Defendant's are based on two controlled sales of heroin to a government informant, Arthur Jordan. At the direction of agents of the Drug Enforcement Agency (DEA), Jordan arranged the first purchase on September 15, 1981, through a telephone call to defendant's wife, Delores. Following the call, defendant and Delores were observed leaving their residence and driving to Hamtramck, Michigan, in defendant's automobile. Later that day, Jordan purchased a quantity of heroin from Delores in the presence of defendant at the Federico residence.
 
 
 3
 On September 23, 1981, Jordan again telephoned the Federicos at the request of the DEA agents. The agents had informed Jordan that in addition to arranging a sale, they wanted to be introduced to the Federicos. During the telephone call, DEA Agent Patrick Valentine got on the phone and asked if he could come over to the Federicos' residence with Jordan. Valentine was told by Delores he would have to wait at a nearby bowling alley. When Valentine asked how much the heroin would cost, Delores said she would not discuss it and if he didn't trust Jordan, he shouldn't buy from him.
 
 
 4
 When Jordan arrived at the Federico residence, defendant was upset because Delores had spoken to someone on the telephone other than Jordan. Jordan testified that defendant was 'saying they could get them for co-conspiracy [for] talking any type of dealings over the telephone.' Jordan further testified that defendant questioned him as to how well he knew Valentine and whether he looked like a 'cop.' Defendant was present at the time of the heroin transaction.
 
 II.
 
 5
 Defendant first argues that his convictions should be reversed because the government's witness, Jordan, testified at the grand jury hearing that he had not been offered anything in exchange for testifying against defendant, but then correctly testified at trial as to payments received. In support of his position, defendant relies on United States v. Kaplan, 470 F.2d 100 (7th Cir. 1972), cert. denied, 410 U.S. 966 (1973), wherein the court reversed the defendant's conviction because the prosecutor failed to correct trial testimony by the government witness that the prosecutor knew to be false. The court held that such amounted to a due process violation under Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959) (principle that government may not knowingly use false evidence is 'implicit in any concept of ordered liberty').
 
 
 6
 Defendant's reliance herein on Kaplan is misplaced. In Kaplan the government witness repeatedly denied at trial that he had been offered anything for his testimony and the prosecutor allowed the misrepresentation to go uncorrected. In contract, in the instant case, Jordan's testimony at trial was truthful. Furthermore, the fact that Jordan received government payments was elicited on direct examination. Finally, defense counsel used the inconsistency between Jordan's testimony before the grand jury and his testimony at trial to attempt to impeach Jordan's credibility. Under these circumstances, it cannot be said that defendant's right to a fair trial was prejudiced.
 
 
 7
 Defendant next argues that reversible error was committed because the court allowed Jordan to plead the fifth amendment in response to questioning during cross-examination as to his income tax return. Defendant advances several theories. First, he appears to argue that the prosecution is guilty of misconduct in calling a witness it knew would plead the fifth amendment. We reject this claim because there is no evidence that the prosecutor knew the witness would so respond or even that the witness' tax return would be a subject of questioning.
 
 
 8
 Next, defendant appears to argue that under Namet v. United States, 373 U.S. 179, 83 S. Ct. 1151 (1963), reversal is required because of a conscious effort by the prosecution to build a case based on inferences which issued from the witness' claim of the privilege. This argument is without merit for the reason that it was defense counsel who questioned Jordan regarding his tax return and who wanted to bring before the jury Jordan's claim that to answer would be incriminating. In such a situation it cannot be asserted that the prosecution was impermissibly attempting to derive evidentiary value from inferences arising from the claiming of the privilege.
 
 
 9
 Finally, defendant asserts that his sixth amendment right to confront his adversarial witness was effectively denied by the court's refusal to allow cross-examination of Jordan about his tax return. This court has stated:
 
 
 10
 When a prosecution witness refuses to submit to cross-examination, it may be necessary for the trial court to strike all or part of his testimony. . . . A defendant's rights do not bar the admission of the witness's testimony against him where the questions concern subject matter which is either collateral or cumulative and where the cross-examination is directed at the witness's general credibility rather than toward matters relating to the specific events of the crime charged.
 
 
 11
 United States v. LaRiche, 549 F.2d 1088, 1096-97 (6th Cir.), cert. denied, 430 U.S. 987 and 434 U.S. 966 (1977). In the instant case the questioning concerned a subject (impeachment) that is both collateral and cumulative; therefore, defendant's sixth amendment right to confrontation was not denied. See also United States v. Nunez, 668 F.2d 1116 (10th Cir. 1981).
 
 
 12
 Defendant's next major argument is that the prosecutor introduced into his closing argument statements unsupported by evidence produced during trial. Specificially, defendant asserts the prosecutor committed error when he stated that telephone records indicated that on September 15, 1981, a telephone call was placed from the Federico residence to a restaurant in Hamtramck. The telephone records in evidence show that a telephone call was placed on September 13, 1981, and indicate nothing about a restaurant. Furthermore, the telephone representative testified that the prefix of the number called was assigned to Highland Park and Detroit, as well as Hamtramck.
 
 
 13
 As a preliminary point, we note that defendant failed to object to the prosecutor's statement; therefore, any error must be disregarded unless it affected defendant's 'substantial rights.' Fed. R. Crim. P. 52(a).
 
 
 14
 In evaluating this claim,
 
 
 15
 [W]e consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 16
 United States v. Leon, 534 F.2d 667, 679 (6th Cir. 1976).
 
 
 17
 Having reviewed the record, we conclude that defendant has failed to demonstrate plain error as the remarks were isolated and of relative unimportance in light of the overall evidence adduced against defendant. See also Webster v. Rees, 729 F.2d 1078, 1080 (6th Cir. 1984).
 
 
 18
 Defendant's final claim of error is that the evidence is insufficient to support his conviction.
 
 
 19
 In evaluating a claim that the evidence is insufficient to support a conviction, the court must weigh the evidence in the light most favorable to the prosecution and determine whether a reasonable mind might fairly find guilt beyond a reasonable doubt. United States v. Gibson, 675 F.2d 825, 829 (6th Cir. 1982), cert. denied, 459 U.S. 972, 103 S. Ct. 305, 74 L.Ed.2d 285 (1982). The evidence to be considered may include circumstantial proof and reasonable inferences drawn from the evidence. United States v. Flaherty, 668 F.2d 566, 579 (1st Cir. 1981).
 
 
 20
 United States v. McCullah, 745 F.2d 350, 354 (6th Cir. 1984).
 
 
 21
 Viewing the record in the light most favorable to the prosecution, the evidence and the inferences to be drawn therefrom demonstrate (1) that defendant traveled in his automobile to Hamtramck with Delores to pick up the heroin; (2) that Jordan purchased heroin on two occasions from Delores at the Federico residence in the presence of defendant; (3) that defendant was upset that Delores had spoken to someone other than Jordan on the telephone; (4) that defendant stated to Jordan that the authorities could 'get them' for conspiracy for discussing heroin transactions over the telephone; and (5) that defendant questioned Jordan about the identity of agent Valentine.
 
 
 22
 This evidence is sufficient to support convictions for the crimes charged in the indictment. See United States v. Thompson, 533 F.2d 1006 (6th Cir.), cert. denied, 429 U.S. 939 (1976) (conspiracy); United States v. Bradley, 421 F.2d 924 (6th Cir. 1970) (aiding and abetting).
 
 III.
 
 23
 Accordingly, the judgment of the district court is AFFIRMED in all respects.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation